UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHUNHONG JIA, et al.,

        Plaintiffs,

v.                                    Case No. 8:19-cv-2527-T-33CPT

BOARDWALK FRESH BURGERS &
FRIES, INC., et al.,

        Defendants.

_____/

**ORDER**

This matter comes before the Court upon consideration of Defendants Boardwalk Fresh Burgers & Fries, Inc. (BFBF) and David DiFerdinando's Partial Motion to Dismiss Second Amended Complaint (Doc. # 71), filed on July 30, 2020. Plaintiffs responded on August 12, 2020. (Doc. # 81). For the reasons set forth below, the Motion is granted.

**I.   Background**

Plaintiffs are Chinese citizens who sought permanent legal residence in the United States through the EB-5 Immigrant Investor Program. (Doc. # 70 at ¶ 1, 3). To qualify for the EB-5 Program and receive permanent legal resident status, immigrants "must invest at least $1,000,000 of capital in [a] new commercial enterprise that creates at least 10 jobs[.]" (Id. at ¶ 19-21). Alternatively, immigrants who

1

invest in "targeted employment area[s]" may invest $500,000. (Id. at ¶ 21).

Beginning in 2013, DiFerdinando and Terry and Gary Chan discussed entering into a joint venture to develop restaurants in Ohio with the help of foreign investment through the EB-5 Program. (Id. at ¶ 23). DiFerdinando and the Chans established several business entities to do so, and then developed a business plan and other informational and promotional materials to entice foreign investment. (Id. at ¶¶ 24-26, 67-70).

The business plan provided that twelve foreign investors would each invest $500,000 into one such entity, Boardwalk Fries Opportunities, L.P. (BWF OPP), and that another entity, BWF MGMT would contribute $3,000,000 in cash to the venture. (Id. at ¶ 75-76). The business plan stipulated that BWF OPP would "seek to build ten [BFBF] restaurants" within two years and that investors would receive certain approvals necessary to become legal U.S. residents in 2016. (Id. at ¶ 88).

In early 2014, Defendants and the Chans furnished these and other documents to Plaintiffs. (Id. at ¶ 91). Plaintiffs allege that, relying on these representations, they contracted to invest in BWF OPP. (Id. at ¶¶ 22, 101-02). Each of the seven Plaintiffs then contributed $500,000 to BWF OPP.

(Id. at ¶¶ 22, 103-09).

But, by May 2016, there had been no progress on the completion of the Ohio BFBF restaurants, at which point the project shifted to developing restaurants in Florida, New York, and Massachusetts. (Id. at 114-16). After this change, "Defendants acted as if they were diligently working toward the development of restaurant sites for BWF OPP in these new regions, with a significant focus on Florida." (Id. at ¶ 117).

However, by late 2017, over a year after the projected timeline in the business plan, Plaintiffs expressed concerns as to "whether the restaurants would be developed in time to meet the EB-5 [P]rogram requirements." (Id. at ¶ 123). As it turns out, the restaurants were "never fully developed." (Id. at ¶ 116). And, Defendants failed to contribute $3,000,000 in cash to BWF OPP, as provided for in the business plan. (Id. at ¶¶ 76-79, 84-85).

By virtue of separate litigation in the Southern District of Ohio, Plaintiffs discovered that their investment, totaling over $3 million, had been misappropriated by the Chans. (Id. at ¶¶ 124, 127-29). Plaintiffs allege that Defendants should have known about this misappropriation because they were aware of the lack of progress in the development of the restaurants,

3

DiFerdinando's written authorization gave Gary Chan "unfettered access to [the] Plaintiffs' escrow accounts" from which the funds were taken, and because Defendants allegedly received at least $330,000 of the misappropriated monies. (Id. at ¶¶ 120-22, 129, 132). Without these funds, and with no BFBF restaurants completed, Plaintiffs allege that they not only lost their substantial investments, but also "face serious difficulties in obtaining their green cards because Defendants never completed the job-creating entities needed to satisfy EB-5 conditions." (Id. at ¶ 136).

Plaintiffs filed this action in this Court on October 11, 2019. (Doc. # 1). Plaintiffs filed an amended complaint on January 6, 2020. (Doc. # 22). On March 13, 2020, Defendants filed a motion to dismiss, alleging that the Court lacked jurisdiction and that Plaintiffs failed to plausibly state a claim for relief under Rule 12(b)(6). (Doc. # 33). At a hearing on July 2, 2020, the Court granted Defendants' motion in part and denied it in part. (Doc. # 64). The Court then granted Plaintiffs leave to file a second amended complaint to rectify certain errors. (Id.). On July 16, 2020, Plaintiffs filed the Second Amended Complaint, which includes eighteen causes of action. (Doc. # 70).

On July 30, 2020, Defendants moved to dismiss this

complaint in part or, alternatively, for judgment on the pleadings (Doc. # 71), and Plaintiffs have responded. (Doc. # 81). The Motion is now ripe for review.

## II.  **Legal Standard**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations and citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to "well-pleaded factual

allegations, documents central to or referenced in the complaint, and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## III. **Discussion**

Defendants seek to dismiss four counts of the Second Amended Complaint, arguing that Plaintiffs' claims for respondeat superior, federal securities law violations, aiding and abetting federal securities law violations, and piercing the corporate veil, fail to state legally cognizable causes of action under Rule 12(b)(6). (Doc. # 71 at 1). The Court will address each claim in turn.

### A.   **Respondeat Superior**

Defendants first move to dismiss Count VII, Plaintiffs' respondeat superior claim, arguing that "the doctrine of respondeat superior is merely a theory of liability and not an independent cause of action." (Id. at 3 (emphasis omitted)). The Court agrees.

The parties have not yet briefed the choice-of-law issues presented in this case. However, under Florida, Maryland, and Ohio law, respondeat superior does not constitute an independent cause of action. See Turner Murphy Co. v. Specialty Constructors, Inc., 659 So.2d 1242, 1245 (Fla. 1st D.C.A. 1995)(explaining that respondeat superior

6

"is not itself a cause of action"); <u>Robinson v. Pytlewsi</u>, No. 8:19-cv-01025-PX, 2020 WL 607030, at *10 (D. Md. Feb. 7, 2020) ("The doctrine [of respondeat superior] does not give rise to an independent cause of action but is rather a theory of liability."); <u>Balsley v. L.F.P., Inc.</u>, No. 1:08-CV-491, 2008 WL 11378897, at *6 (N.D. Ohio Dec. 2, 2008) ("There is no independent legal cause of action for respondeat superior[.]" (emphasis omitted)).[1] Rather, it is a *theory* of liability. <u>Wilson v. Ulta Salon, Cosmetic & Fragrance, Inc.</u>, No. 1:19-cv-327, 2020 WL 633302, at *3 n.8 (S.D. Ohio Feb. 11, 2020) ("As Defendant Ulta correctly notes, respondeat superior is not a separate 'claim'"; it is a liability theory." (emphasis omitted)).

Accordingly, Defendants' Motion is granted with respect

---

1. Although Plaintiffs cite to a number of cases in arguing that respondeat superior is an independent cause of action under Ohio law, none of these cited cases specifically hold as much. <u>See</u> <u>Occhionero v. Edmundson</u>, No. 99-L-188, 2001 WL 314821, at *2 (Ohio Ct. App. Mar. 30, 2001) (referring to certain causes of action as "respondeat superior claims" but not holding that such a claim can be standalone and explaining that "respondeat superior is [a] legal theory" (emphasis omitted)); <u>Mender v. Vill. Of Chauncey</u>, 41 N.E.3d 1289, 1301 (Ohio Ct. App. 2015) (dismissing a claim for respondeat superior liability); <u>Richardson v. CVS Caremark Corp.</u>, No. 1:18-cv-1308, 2018 WL 4189522, at *1 (N.D. Ohio Aug. 31, 2018) (same); <u>Wicks v. Lover's Lane Mkt.</u>, No. 28925, 2019 WL 2721515, at *2 (Ohio Ct. App. June 28, 2019) (reversing the lower court's denial of a respondeat superior claim because it was not discussed in the motion for summary judgment).

to Count VII, which is dismissed with prejudice. See Colite Int'l Inc. v. Robert L. Lipton, Inc., No. 05-60046-CIV-DIMITROULEAS, 2006 WL 8431505, at *12 (S.D. Fla. Jan. 20, 2006) ("Plaintiffs' counts for respondeat superior liability should be dismissed with prejudice, since no such cause of action exists for respondeat superior."). However, this does not preclude Plaintiffs from arguing that this theory of liability applies to the present case. See Garcia v. Nev. Prop. 1, LLC, No. 2:14-cv-1707 JCM (GWF), 2015 WL 67019, at *3 (D. Nev. Jan. 6, 2015) (dismissing a claim for respondeat superior but explaining that the plaintiff could still argue that theory).

### B.  Federal Securities Law Violations

Next, Defendants move to dismiss Count X, Plaintiffs' federal securities law claim, arguing that the Court previously "held that five of seven Plaintiffs' securities fraud claims were barred by the statute of repose under 28 U.S.C. § 1658(b)" and that "Plaintiffs' failure to identify which Plaintiffs are pursuing the securities fraud claim . . . plainly runs afoul of both Rule 8 and Rule 9(b), warranting dismissal of Count X in its entirety." (Doc. # 71 at 5).

Indeed, the Court previously dismissed without prejudice the federal securities law claims as barred as to Plaintiffs

8

Chunhong Jia, Naihan Li, Nairuo Li, Weiwei Zhang, and Chong Zhao. (Doc. # 64, Doc # 68 at 88). The Second Amended Complaint offers no reason why the Court should revisit its previous dismissal, and Plaintiffs agree that these claims were properly dismissed as to these five defendants. (Doc. # 70, Doc. # 81 at 3-4).

Additionally, the Court previously dismissed this Count without prejudice as to the two remaining Plaintiffs, Shulei Wang and Lizhong Yao, to the extent that the claim "is based on misrepresentations in the business plan and related documents[.]" (Doc. # 64). Plaintiffs in no way alter their claim to reflect either of these Court directives. (Doc. # 22, Doc. # 70). Indeed, it appears as though Plaintiffs' counsel copied that count word-for-word into the Second Amended Complaint.

Based on Plaintiffs' failure to follow the Court's previous Order, the Court finds that dismissal with prejudice is appropriate to the extent that Count X seeks relief for the five Plaintiffs whose securities fraud claims were barred by the statute of repose, and to the extent that it is based on misrepresentations in the business plan and related documents. (Doc. # 64). While courts should grant leave to amend liberally, Plaintiffs are represented by experienced

9

counsel who has had the benefit of the Court's previous Order in addressing the errors in the pleadings. See Gregory v. City of Tarpon Springs, No. 8:16-cv-237-T-33AEP, 2016 U.S. Dist. LEXIS 169843, at *15 (M.D. Fla. Dec. 8, 2016) (dismissing claim with prejudice after the plaintiff failed to cure deficiencies in the previous complaints). Because it appears that Plaintiffs' counsel made an oversight in merely copying and pasting its previous Count into the Second Amended Complaint, Count X survives as to Defendants Shulei Wang and Lizhong Yao, within the parameters discussed above.

### C.   Aiding and Abetting Securities Law Violations

Defendants also move to dismiss Count XI, Plaintiffs' aiding and abetting federal securities law violations claim. (Doc. # 71 at 4). Defendants argue that Count XI was already dismissed by this Court with prejudice because "no such claim exist[s] under federal securities law." (Id.). Indeed, the Court previously dismissed this claim with prejudice, which Plaintiffs do not dispute. (Doc. # 64; Doc. # 68 at 87-88).

Again, it appears as though Plaintiffs' counsel has simply copied this count from the amended complaint. (Doc. ## 22, 70). Accordingly, the Court strikes Count XI from the Second Amended Complaint. Fed. R. Civ. P. 12(f)(1) (allowing a court to sua sponte strike "any redundant, immaterial,

impertinent, or scandalous matter").

> **D.   Piercing the Corporate Veil**

Finally, Defendants move to dismiss Count XVIII, Plaintiffs' claim for piercing the corporate veil. (Doc. # 71 at 4). Defendants argue that, like the claim for respondeat superior, there is no cognizable independent cause of action for piercing the corporate veil. (Id.). The Court previously dismissed Defendants' standalone claim for piercing the corporate veil but allowed Plaintiffs to replead it under Florida law. (Doc. # 64, Doc. # 68 at 100).

Under Maryland and Ohio Law, piercing the corporate veil is not an independent cause of action. See Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC, 929 F. Supp. 2d 502, 514 (D. Md. 2013) ("Additionally, piercing the corporate veil is not an independent cause of action[.]" (citation omitted)); Trinity Health Sys. v. MDX Corp., 907 N.E.2d 746, 754 (Ohio Ct. App. 2009) ("'Piercing the corporate veil' is not a cause of action in and of itself, but rather, is a legal rule or doctrine that permits a court to disregard the formal corporate structure so that individual shareholders may then be held liable for the actions of the corporation.").

Although Florida courts arguably sometimes allow claims for piercing the corporate veil to be pled as separate causes

of action, "federal courts are generally averse to the
practice." <u>Li v. Walsh</u>, No. 16-81871-CIV-MARRA, 2017 WL
3140522, at *9-10 (S.D. Fla. July 24, 2017); <u>see also</u> <u>Gumbel</u>
<u>v. Scott</u>, No. 09-60480-CIV-JORDAN, 2010 WL 11505125, at *2
(S.D. Fla. Jan. 6, 2010) (citing to <u>Turner Murphy</u> for the
proposition that "piercing the corporate veil is not an
independent cause of action under Florida law"); <u>Peacock v.</u>
<u>Thomas</u>, 516 U.S. 349, 354 (1996) (explaining that veil
piercing "is not itself an independent . . . cause of
action").

Furthermore, none of the cases cited by Plaintiffs
*specifically* hold that piercing the corporate veil
constitutes an independent cause of action. (Doc. # 81 at
3).[2] Conversely, at least one Florida court has found that no
such separate cause of action exists. See <u>Turner Murphy</u>, 659
So.2d at 1245 ("Piercing a corporate veil is not itself a
cause of action[.]").

Accordingly, Defendants' Motion is granted with respect

---

2. See <u>Acadia Partners, L.P. v. Tompkins</u>, 759 So.2d 732 (Fla.
5th DCA 2000) (not specifically holding that a claim for
piercing the corporate veil constitutes an independent cause
of action); <u>Carnes v. Fender</u>, 936 So.2d 11 (Fla. 4th DCA 2006)
(same); <u>Papa John's Int'l, Inc. v. Cosentino</u>, 916 So.2d 977,
985 (Fla. 4th DCA 2005) (not discussing whether a separate
count for piercing the corporate veil is appropriate but
allowing it to proceed, nonetheless).

to Count XVIII, which is dismissed with prejudice. See Oginsky v. Paragon Props. of Costa Rica LLC, 784 F. Supp. 2d 1353, 1373 (S.D. Fla. 2011) (dismissing alter ego claim with prejudice despite Florida courts allowing such causes of action); Raimbeault v. Accurate Mach. & Tool, LLC, No. 14-CIV-20136, 2014 WL 5795187, at *9 (S.D. Fla. Oct. 2, 2014) (dismissing a veil-piercing claim with prejudice). However, given this discrepancy, Plaintiffs may replead their veil-piercing theory of liability in the body of the Complaint. See Li, 2017 WL 3140522, at *9 (allowing plaintiffs leave to replead alter ego liability in the body of their complaint after dismissing a standalone claim for piercing the corporate veil).

Because the Court grants Defendants' partial Motion to Dismiss, it need not address their Motion for Judgment on the Pleadings.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants Boardwalk Fresh Burgers & Fries, Inc., and David DiFerdinando's Partial Motion to Dismiss (Doc. # 71) is **GRANTED.**

(2) Counts VII and XVIII are **DISMISSED** with prejudice, but Plaintiffs are granted leave to replead the respondeat-

superior and veil-piercing theories in the body of the complaint. Count **X** is **DISMISSED** with prejudice to the extent it seeks relief for the five Plaintiffs whose securities fraud claims are barred by the statute of repose and to the extent that it is based on misrepresentations in the business plan and related documents. Count XI is **STRICKEN** from the Second Amended Complaint.

(3) Plaintiffs may file a third amended complaint that complies with this Order by **October 5, 2020.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 21st day of September, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE