UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHUNHONG JIA, NAIHAN LI,
NAIRUO LI, SHULEI WANG,
LIZHONG YAO, WEIWEI ZHANG,
and CHONG ZHAO,

     Plaintiffs,

v.                                    Case No. 8:19-cv-2527-VMC-CPT

BOARDWALK FRESH BURGERS &
FRIES, INC., and DAVID
DIFERDINANDO,

     Defendants and
     Third-Party Plaintiffs,

v.

MIN WANG a/k/a LILI WANG,
YANNAN WANG, NEW CITY
ADVISORS, LLC, NEW CITY
CAPITAL, LLC, GARY CHAN,
ARCHWAY PARTNERS, LLC,
JARDIN HILL, LLC, and
CLEARWATER HOSPITALITY
GROUP, LLC,

     Third-Party Defendants.
_____/

## ORDER

    This matter comes before the Court upon consideration of
Third-Party Defendants Min Wang a/k/a Lili Wang, Yannan Wang,
New City Advisors, LLC, and New City Capital, LLC's
(collectively, the "New City Defendants'") Motion for Summary
Judgment (Doc. # 170), Defendants and Third-Party Plaintiffs'

Boardwalk Fresh Burgers & Fries, Inc., and David DiFerdinando's (collectively, the "Boardwalk Defendants'") Motion for Summary Judgment (Doc. # 171), the New City Defendants' Motion for Determination of Choice of Law (Doc. # 169), and the Boardwalk Defendants' Memorandum of Law Regarding Choice of Law Issues (Doc. # 172), all filed on June 1, 2021. The parties have responded (Doc. ## 177; 183; 184) and replied to the applicable Motions. (Doc. ## 198; 199). For the reasons below, the Boardwalk Defendants' Motion is granted and the New City Defendants' Motions are denied.

## I.   **Background**

Plaintiffs Chunhong Jia, Naihan Li, Nairuo Li, Shulei Wang, Lizhong Yao, Weiwei Zhang, and Chong Zhao are Chinese citizens who sought lawful residency status in the United States through the EB-5 immigrant investor program. (Doc. # 117 at ¶ 1-3; Doc. # 201 at 17:24-18:6; Doc. # 202 at 9:21-23, 11:9-10; Doc. # 203 at 9:1-3, 12:1-7; Doc. # 204 at 7:4-5; Doc. # 205 at 7:18-19, 10:4-7; Doc. # 206 at 6:25-7:1, 8:5-12; Doc. # 207 at 7:1-4, 10:18-12:6; Doc. # 208 at 6:22-24). Boardwalk Fresh is "a franchisor of fast casual restaurants in the United States and worldwide." (Doc. # 171 at ¶ 1; Doc. # 171-2 at ¶ 5). DiFerdinando is the president and chief executive officer of Boardwalk Fresh. (Doc. # 171

at ¶ 1; Doc. # 171-2 at ¶ 3). In 2013, Boardwalk Fresh began discussions with Terry, Gary, and Jacqueline Chan about marketing their franchises to Chinese investors hoping to participate in the EB-5 program. (Doc. # 171 at ¶ 2; Doc. # 213 at ¶ 2; Doc. # 171-2 at ¶ 7). Boardwalk Fresh "did not have any prior experience with the EB-5 program," and so the Chans agreed to "handle the EB-5 aspects" of the venture. (Doc. # 213 at ¶ 3; Doc. # 117-2 at ¶¶ 7-8). After these discussions, Boardwalk Fresh and Jardin Hill, LLC – the Chans' company – entered into a joint development agreement. (Doc. # 200 at 34:7-35:5; Doc. # 170 at ¶ 6). According to DiFerdinando, the agreement included the sale of the rights to develop Boardwalk Fresh franchises in parts of Ohio and Pennsylvania for $330,000. (Doc. # 200 at 34:11-35:1).

In November 2013, Boardwalk Fries Opportunities, LP, was created. (Doc. # 171-4). BWF MGMT, LLC, which was also created in November 2013, was the general partner of Boardwalk Fries Opportunities. (Doc. # 117-6 at 29; Doc. # 171-6). Boardwalk Fries, LLC, which was created in November 2015, was the managing member of BWF MGMT. (Doc. # 117-6 at 29; Doc. # 117-7). Archway Partners, LLC – one of the Chans' companies – was also a member of BWF MGMT. (Doc. # 117-5 at 29). The Boardwalk Defendants contend that Gary Chan created all of these

entities, citing their corporate certificates filed with the State of Ohio – which all include his name alone. (Doc. # 171 at ¶ 9; Doc. # 117-4 at 2; Doc. # 117-6 at 2; Doc. # 117-7 at 2). According to DiFerdinando's sworn declaration, neither he nor Boardwalk Fresh had "any involvement in the creation or management of [these entities]," "owned any interest in [these entities]," or "held any position with [these entities]." (Doc. # 171-2 at ¶¶ 14-18). Without a contradictory citation, Plaintiffs deny that Gary Chan created these entities. (Doc. # 213 at ¶¶ 9-12). Plaintiffs do cite to a Maryland entity also named Boardwalk Fries, LLC, that appears to have existed as early as March 2013. (Doc. # 213 at ¶ 11; Doc. # 213-1). Plaintiffs provide no information as to the members of the Maryland LLC. (Doc. ## 183; 210).

Boardwalk Fries Opportunities' corporate structure was memorialized in a business plan developed by the Chans:



(Doc. # 117-6 at 29). This business plan, which also describes the proposed venture, stipulated that "[t]welve EB-5 immigrant investors [would] invest a total of $6 million in Boardwalk Fries Opportunities, . . . and become limited partners in [the] new commercial enterprise." (Id. at 8). BWF MGMT, in turn, would contribute $3 million to the partnership. (Id. at 6-7). The business plan further noted that the partnership would endeavor to build ten restaurants in Cincinnati and Dayton, Ohio. (Id. at 7). According to DiFerdinando's sworn declaration, neither he nor Boardwalk Fresh "had any role in the creation of the [b]usiness [p]lan." (Doc. # 171-2 at ¶ 12). Still, in 2014, DiFerdinando signed and had notarized an affidavit ("the Affidavit") providing:

> David DiFerdinando, in conjunction with, by and/or through Boardwalk Fresh Burgers & Fries, Boardwalk Fries, D's Inc. or other affiliated companies and partners, commit to contributing the sum of USD Three Million ($3,000,000) to Boardwalk Fries Opportunities, L.P. via BWF MGMT, LLC, its General Partner.

(Doc. # 117-7 at 4). According to DiFerdinando, Boardwalk Fresh never intended to contribute $3 million in cash, but instead planned to "raise the $3 million through tenant allowances [via] landlords." (Doc. # 200 at 54:7-19).

In early 2014, the Chans contacted New City Advisors to obtain assistance in attracting Chinese investors to their

venture. (Doc. # 171 at ¶ 17; Doc. # 213 at ¶ 17; Doc. # 171-12). Thereafter, New City Advisors "recruit[ed] and identif[ied] Chinese nationals interested in investing in the Chans' Boardwalk Fries Opportunities." (Doc. # 171 at ¶ 23; Doc. # 213 at ¶ 23; Doc. # 171-21). This led to each Plaintiff investing $500,000 in Boardwalk Fries Opportunities. (Doc. ## 117-9; 117-10; 117-11; 117-12; 117-13; 117-14; 117-15). Plaintiffs' funds were sent to U.S. Bank escrow accounts. (Doc. # 117 at ¶ 115).

Prior to their investments, "Plaintiffs communicated exclusively with [New City Advisors] and its agents." (Doc. # 171 at ¶ 25; Doc. # 213 at ¶ 25). All information furnished to Plaintiffs regarding the partnership was provided through New City Advisors. (Doc. # 171 at ¶ 28; Doc. # 213 at ¶ 28; Doc. # 171-2 at ¶¶ 19-22). Indeed, "Plaintiffs never communicated [or met] with DiFerdinando." (Doc. # 171 at ¶ 26; Doc. # 213 at ¶ 26; Doc. # 202 at 14:22-15:2; Doc. # 203 at 23:2-3; Doc. # 204 at 11:4-7, 15:23-16:2; Doc. # 205 at 13:23-14:2; Doc. # 206 at 19:14-15; Doc. # 207 at 19:2-3; Doc. # 208 at 15:2-7; Doc. # 171-2 at ¶ 19). Nor did Plaintiffs ever communicate with any agent or employee of Boardwalk Fresh, aside from Lizhong Yao who chatted with a staff member of a Boardwalk Fresh restaurant while on a trip to Washington,

D.C., in 2014. (Doc. # 205 at 14:3-12; Doc. # 206 at 19:16-18; Doc. # 207 at 19:4-9; Doc. # 208 at 15:8-13; Doc. # 171-2 at ¶ 20). And, Plaintiffs did not recall ever seeing DiFerdinando's Affidavit prior to investing in Boardwalk Fries Opportunities. (Doc. # 202 at 52:19-5; Doc. # 204 at 64:5-16; Doc. # 205 at 36:20-25; Doc. # 206 at 46:15-47:3; Doc. # 207 at 23:19-24:4; Doc. # 208 at 48:24-49:6).

Following Plaintiffs' investments in 2014, however, the Boardwalk Fresh restaurants were not built in Ohio. (Doc. # 200 at 68:2-4; Doc. # 117-9 at 5; Doc. # 117-10 at 5; Doc. # 117-11 at 5; Doc. # 117-12 at 5; Doc. # 117-13 at 5; Doc. # 117-14 at 5; Doc. # 117-15 at 5). Instead, the focus shifted to Florida after Terry Chan moved there from Ohio. (Doc. # 200 at 68:6-8, 75:1-7). By 2017, Plaintiffs were concerned with the progress of the venture in Florida. (Doc. # 200 at 59:10-13; Doc. # 202 at 35:1-4). This concern came in part from the restaurants not yet being open and how that would impact their ability to obtain lawful permanent residency through the EB-5 program. (Doc. # 204 at 12:7-15).

Then, in February 2018, Plaintiffs initiated a lawsuit against Gary Chan, Terry Chan, Jacquelyn Chan, Boardwalk Fries Opportunities, BWF MGMT, Boardwalk Fries, LLC, and various other entities related to the Chans, in the Southern

District of Ohio. (Doc. # 171-9). Plaintiffs alleged that the Chans misappropriated their investment funds, among other torts. (Id. at ¶¶ 84-92). According to Plaintiffs, the "misappropriation began on or about October 10, 2015, when Gary Chan transferred $450,000 from each [Plaintiff's] escrow account to [Boardwalk Fries Opportunities'] GECU bank account. The Chans later removed the remaining $50,000 in each Plaintiffs' escrow account and deposited those funds into" Boardwalk Fries Opportunities' accounts as well. (Doc. # 184 at ¶ 18; Doc. # 171 at ¶ 38).

Sometime prior to these transfers, Boardwalk Fries Opportunities and BWF MGMT signed a letter authorizing Gary Chan to access the funds in escrow. (Doc. # 117-16). DiFerdinando signed this document on behalf of both entities as the "authorized signer." (Id.). According to DiFerdinando, he did not learn about this diversion until 2018. (Doc. # 171-2 at ¶¶ 23-24). Later in 2015, Gary Chan transferred $330,000 to Boardwalk Fresh. (Doc. # 22-17 at 2-3).

Separately, in Ohio state court, Plaintiffs obtained a default judgment in the amount of $3.5 million against BWF MGMT on July 29, 2019. (Doc. # 171-28).

Plaintiffs initiated this action on October 11, 2019. (Doc. # 1). Following a several motions to dismiss, on October

5, 2020, Plaintiffs filed the operative third amended complaint. (Doc. # 117). The third amended complaint includes the following claims against the Boardwalk Defendants: fraud (Count I), breach of contract (Count II), breach of fiduciary duty (Count III), negligence (Count IV), gross negligence (Count V), conversion (Count VI), unjust enrichment/quantum meruit (Count VII), conspiracy (Count VIII), federal securities law violations (Count IX), aiding and abetting fraud (Count X), aiding and abetting conversion (Count XI), aiding and abetting breach of fiduciary duty (Count XII), constructive fraud (Count XIII), aiding and abetting constructive fraud (Count XIV), and negligent misrepresentation (Count XV). (Id.). The Boardwalk Defendants filed their answer to the third amended complaint on October 19, 2020. (Doc. # 188).

On August 6, 2020, the Boardwalk Defendants filed a third-party complaint against the New City Defendants and Third-Party Defendants Gary Chan, Archway Partners, LLC, Jardin Hill, and Clearwater Hospitality Group, LLC (collectively, the "Chan Defendants"). (Doc. # 73). The third-party action is only being actively litigated by the Boardwalk Defendants and New City Defendants. On September 22, 2021, the Clerk entered default against Archway Partners

and Clearwater Hospitality. (Doc. ## 113; 114). On November 16, 2020, the case was stayed as to Gary Chan pending his bankruptcy proceedings. (Doc. # 126). And, the Boardwalk Defendants voluntarily dismissed their claims against Jardin Hill with prejudice on December 15, 2020. (Doc. ## 136; 137).

Following a number of motions to dismiss, on February 17, 2021, the Boardwalk Defendants filed a second amended third-party complaint. (Doc. # 141). The New City Defendants again moved to dismiss the second amended third-party complaint, which the Court granted in part on April 22, 2021. (Doc. ## 143; 159). Relevant here, the second amended third-party complaint remains as to the claims for contribution against: New City Advisors (Count I), New City Capital (Count II), Lili Wang (Count III), and Yannan Wang (Count IV). (Doc. # 141; Doc. # 159 at 20). On May 6, 2021, the New City Defendants filed their answers to the second amended third-party complaint. (Doc. # 163).

Now, both the Boardwalk Defendants and the New City Defendants seek an entry of summary judgment in their favor. (Doc. ## 170; 171). These parties also seek a determination of which state's law applies to the case. (Doc. ## 169; 172). Both parties have responded (Doc. ## 177; 183; 184) and replied. (Doc. ## 198; 199). The time to otherwise respond

has elapsed, and the Motions are ripe for review.

## II. **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its

11

burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the Court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his [conclusory] allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. **Analysis**

The Court will begin by addressing the applicable law, followed by the parties' Motions for Summary Judgment.

A. <u>**Conflict of Laws**</u>

The Court previously determined that there is a conflict as to the validity of the Boardwalk Defendants' contribution claims depending on whether Florida, Ohio, or Maryland law applies. (Doc. # 159). Accordingly, the Court directed the parties to brief the applicability of each law to the claims in the underlying third amended complaint (Doc. # 156). In their response, the Boardwalk Defendants explained that they are seeking contribution solely on Plaintiffs' tort claims. (Doc. # 177 at 3). The New City Defendants argue that Florida law applies to all of the underlying tort claims. (Doc. # 169 at 1-2). Meanwhile, the Boardwalk Defendants contend that some of the underlying tort claims are governed by Ohio law, while others are governed by Maryland law. (Doc. # 172 at 1).

"A federal district court sitting in diversity must apply the choice of law rules of the forum state." <u>Jeffers v. Kerzner Int'l Hotels Ltd.</u>, 319 F. Supp. 3d 1267, 1270 (S.D. Fla. 2010). "As a preliminary matter, the court must characterize the legal issue and determine whether it sounds in torts, contracts, property law, etc. Once it has characterized the legal issue, it determines the choice of law rule that the forum state applies to that particular type of issue." <u>Grupo Televisa, S.A. v. Telemundo Commc'ns Grp.,</u>

13

Inc., 485 F.3d 1233, 1240 (11th Cir. 2007). "Under Florida law, a court makes a separate choice of law determination with respect to each particular issue under consideration." Trumpet Vine Invs., N.V. v. Union Cap. Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996).

"In tort actions, federal courts sitting in diversity in Florida employ Florida's 'most significant relationship' test to resolve conflicts of law." Bell v. Miedema, --- F. Supp. 3d ----, 2021 WL 307355, at *2 (M.D. Fla. Jan. 29, 2021). "The test involves consideration of four relevant factors: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." Jeffers, 319 F. Supp. 3d at 1270. "[T]he place of injury is of particular importance in the case of personal injuries and of injuries to tangible things." Id. at 1271 (citation omitted). But, "the place of injury is less significant in the case of fraudulent misrepresentations." Trumpet Vine, 92 F.3d at 1116 (citations omitted).

When the plaintiff relied on misrepresentations in a forum other than where they were made, courts consider the

following additional factors: (1) "the place, or places, where the plaintiff acted in reliance upon the defendant's representations," (2) the place where the plaintiff received the representations," (3) "the place where the defendant made the representations," (4) "the domicile, residence, nationality, place of incorporation and place of business [] of the parties," (5) "the place where a tangible thing which is the subject of the transaction between the parties was situated at the time," and (6) "the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant." Lacy v. BP, PLC, No. 11-Civ-21855, 2015 WL 3952593, at *1-2 (S.D. Fla. June 29, 2015) (citation omitted).

"The purpose of [this] test is not to find the sovereign with the most contacts; rather, the analysis is done to determine which jurisdiction has the most 'significant' contacts." Valentino v. Bond, No. 3:06-cv-504-MCR, 2008 WL 3889603, at *6 (N.D. Fla. Aug. 19, 2008) (citing Judge v. Am. Motors Corp., 908 F.2d 1565, 1569 (11th Cir. 1990)).

### 1. **Counts I, X, and XV**

First, the Court finds that Maryland has the most significant relationship to Counts I, X, and XV – Plaintiffs' claims for fraud, aiding and abetting fraud, and negligent

misrepresentation. There, Plaintiffs allege that the Boardwalk Defendants misled them into investing in Boardwalk Fries Opportunities – primarily through DiFerdinando's Affidavit. (Doc. # 117 at ¶¶ 144-58, 217-23, 245-50).

Considering the fraud-specific factors of the most significant relationship test, the subscription agreements were received and signed by Plaintiffs in various cities in China. (Doc. # 117-9 at 5; Doc. # 117-10 at 5; Doc. # 117-11 at 5; Doc. # 117-12 at 5; Doc. # 117-13 at 5; Doc. # 117-14 at 5; Doc. # 117-15 at 5). The false representations were made by the Boardwalk Defendants, who have their corporate headquarters in Maryland. (Doc. # 117 at ¶¶ 4, 145, 218). The purported fraudulent Affidavit sent by the Boardwalk Defendants to Plaintiffs – which forms the basis of these claims – was notarized in Howard County, Maryland. (Doc. # 117-7 at 4). The Boardwalk Defendants also allegedly provided the Chans with the information to create the business plan provided to Plaintiffs. (Doc. # 117 at ¶ 72). The business plan repeatedly notes that Boardwalk Fresh is based in Maryland. (Doc. # 117-7 at 5, 7, 31). Plaintiffs cite to no specific statement that allegedly induced them to invest in the franchises that was made by the Boardwalk Defendants anywhere other than Maryland. (Doc. ## 169; 177; 172; 197).

16

Plaintiffs are Chinese citizens who – for the most part – reside in China. (Doc. # 117 at ¶ 1). At least two of the Plaintiffs "spend time" in Florida or have recently moved to Florida on a temporary green card. (Doc. # 202 at 10:3-25; Doc. # 203 at 9:18-11:25). DiFerdinando is a Florida citizen domiciled in Florida. (Doc. # 117 at ¶ 5; Doc. # 200 at 10:4-16). Boardwalk Fresh is a Delaware corporation with its principal place of business in Maryland. (Doc. # 117 at ¶ 4).

The subject of the transaction was the development of Boardwalk franchises in Ohio. (Doc. # 117 at ¶¶ 156, 219; Doc. # 117-5 at 5; Doc. # 117-6 at 5). Although the partnership's objective later shifted to Florida restaurants, and no Ohio restaurants were actually built, Plaintiffs were allegedly induced into investing with the Boardwalk Defendants for the purpose of building Ohio restaurants. (Doc. # 117 at ¶ 161; Doc. # 200 at 68:2-8). And, this change in focus to Florida did not occur until after the alleged fraudulent inducement. (Doc. # 172 at 2). The agreements signed by Plaintiffs provide for their subscription to an Ohio partnership. (Doc. ## 117-9; 117-10; 117-11; 117-12; 117-13; 117-14; 117-15). Plaintiffs performed their obligations under the subscription agreement – the payment of $500,000 each – into individual escrow accounts at a bank in

Minnesota. (Doc. # 117 at ¶ 115; Doc. # 172 at 2). It is unclear whether Plaintiffs were in the United States or China when these funds were transferred to the escrow accounts.

Taken together, the Court finds that Maryland has the most significant relationship to these fraud claims. See Cluck-U Chicken, Inc. v. Cluck-U Corp., 358 F. Supp. 3d 1295, 1309 (M.D. Fla. 2017) ("Plaintiffs' complaint and the record evidence convince me that Plaintiffs' case centers on Defendants' misrepresentations in the franchise disclosure document, a document generated by Defendants' corporate office in Maryland. Defendants have no other franchisees in Florida. Maryland is [the] hub of this dispute and has the most significant relationship to Plaintiffs' tort claims; therefore, I will apply Maryland law to Plaintiffs' fraudulent inducement claim[.]"). The false statements that purportedly induced Plaintiffs to invest in the Boardwalk franchises were made in Maryland. (Doc. # 117-7 at 4). None of these parties are citizens of Ohio, or otherwise have contacts with Ohio except for their plan to construct restaurants there. (Doc. # 117 at ¶¶ 1-5, 161). The only concrete contact with Florida when Plaintiffs were allegedly induced to invest in the venture was DiFerdinando's residence therein. (Id. at ¶ 5). The Court does not find that

Plaintiffs' recent temporary residence in Florida changes this determination. (Doc. # 202 at 10:3-25; Doc. # 203 at 9:18-11:25). And, none of the parties argue that Chinese law applies. (Doc. ## 169; 172). Accordingly, Maryland law applies to Counts I, X, and XV. (Doc. # 172 at 3).

### 2. **Counts III, IV, V, XII, XIII, XIV**

Next, the Court finds that Ohio has the most significant relationship to Counts III, IV, V, XII, XIII, and XIV – Plaintiff's claims for breach of fiduciary duty, negligence, gross negligence, aiding and abetting breach of fiduciary duty, constructive fraud, and aiding and abetting constructive fraud. These claims are based on the Boardwalk Defendants' allegedly failing to properly manage or oversee Boardwalk Fries Opportunities, allowing the conversion of Plaintiffs' funds, failing to open any restaurants, failing to contribute $3 million in cash to the partnership, and breaching various duties arising out of the partnership. (Doc. # 117 at ¶¶ 171-78).

The alleged injuries occurred in various places, including Ohio – where the Boardwalk Defendants failed to open restaurants – and Florida, where the parties also planned to open restaurants. (Doc. # 172 at 7; Doc. # 200 at 35:2-5; 68:2-8; Doc. # 184 at ¶ 18). Plaintiffs' funds were also

allegedly unlawfully transferred to an Ohio partnership's bank account. (Doc. # 117 at ¶¶ 133-34). It is unclear precisely where the conduct causing the injury occurred. The Boardwalk Defendants' corporate activities would have arisen out of Maryland, but the parties do not fully brief this point. (Doc. ## 169; 172). As noted, Plaintiffs are Chinese citizens who by and large reside in China. (Doc. # 117 at ¶ 1). At least two of the Plaintiffs "spend time" in Florida or have recently moved to Florida on a temporary green card. (Doc. # 202 at 10:3-25; Doc. # 203 at 9:18-11:25). DiFerdinando is domiciled in Florida. (Doc. # 117 at ¶ 5; Doc. # 200 at 10:4-16). Boardwalk Fresh is a Delaware corporation with its principal place of business in Maryland. (Doc. # 117 at ¶ 4).

Importantly, however, the parties' relationship is centered in Ohio because the partnership giving rise to the Boardwalk Defendants' purported duties is an Ohio partnership and Ohio is where the restaurants were initially set out to be built. (Doc. # 117 at ¶¶ 38, 120; Doc. # 117-5). Taken together, the Court finds that Ohio law applies to Counts III, IV, V, XII, XIII, and XIV. See Calixto v. Watson Bowman Acme Corp., 637 F. Supp. 2d 1064, 1066-68 (S.D. Fla. 2009) (finding that New York law applied to the tort claims because

that is where the parties' relationship was centered and where the plaintiff's injuries occurred).

### 3. **Counts VI and XI**

Similarly, the Court finds that Ohio has the most significant relationship to Counts VI and XI – Plaintiff's claims for conversion and aiding and abetting conversion. See Lacy, 2015 3952593, at *2 ("The 'most significant relationship' test also applies to . . . conversion claims."). The funds at issue were transferred into an Ohio partnership's bank account. (Doc. # 117 at ¶¶ 133-34). There is no allegation that the funds were transferred into a Florida account, and indeed, Plaintiffs' allegations fail to show that this conversion has any connection to Florida except for some of the parties' domiciles. (Doc. # 117). Additionally, these conversions occurred prior to the construction of Boardwalk Franchises shifting from Ohio to Florida. (Doc. # 184 at ¶¶ 15, 18). Thus, Ohio law applies to Counts VI and XI. See Reliastar Life Ins. Co. v. Kiel, No. 3:08-cv-751-MMH-MCR, 2010 WL 11507705, at *2 (M.D. Fla. July 29, 2010) ("While Plaintiff is a Minnesota corporation and the injury might be felt wherever else it is located, it was conducting business in [Ohio] at the time of the incident, the relationship between the parties centered in [Ohio], and the conduct

causing the alleged injury occurred within the State.").

### 4. **Count VIII**

Lastly, the Court finds that Ohio has the most significant relationship to Count VIII – Plaintiffs' civil conspiracy claim. This claim is based on a conspiracy between the two Boardwalk Defendants, as well as a conspiracy between the Boardwalk Defendants and the Chan Defendants. (Doc. # 117 at ¶¶ 200-201). Plaintiffs allege that the co-conspirators "fraudulently misrepresent[ed] material facts to Plaintiffs," violated fiduciary duties, and committed fraud and various other torts. (Id.).

As previously mentioned, the injuries arising from these various torts occurred in either China, Florida, or Ohio. The conduct allegedly causing the injury occurred in Maryland and Ohio. (Doc. # 117 at ¶¶ 133-34, 140; Doc. # 117-1). Maryland is where the Boardwalk Defendants are located as a corporate entity, and it is also where the Affidavit that allegedly induced Plaintiffs to invest in Boardwalk Fries Opportunities was created and signed. (Doc. # 117 at ¶¶ 1-5; Doc. # 117-7 at 4). The Boardwalk Defendants are domiciled in Maryland and Florida, while Plaintiffs are in large part domiciled in China. (Doc. # 117 at ¶¶ 1, 4-5). The parties' relationship – if any – was centered in Ohio and Florida at various times,

depending on where the franchises were set on being built. (Id. at ¶¶ 120-21, 161). The partnership at issue is an Ohio partnership. (Doc. # 117-5). Most of the claims underlying this derivative claim are governed by Ohio law. Taken together, the Court finds that Ohio law applies to Count VIII. See Eli Rsch., LLC v. Must Have Info Inc., No. 2:13-cv-695-SPC-CM, 2014 WL 4540110, at *3-4 (M.D. Fla. Sept. 11, 2014) (finding that North Carolina law applied to a civil conspiracy claim because that is where the business at issue was conducted and where the parties' relationship was centered).

In sum, the Court finds that Maryland law applies to Counts I, X, and XV, while Ohio law applies to Counts III, IV, V, VI, VIII, XI, XII, XIII, and XIV. Therefore, the New City Defendants' Motion for Determination of Choice of Law – which sought the application of Florida law to all underlying claims – is denied. (Doc. # 169 at 5-8).

**B. <u>Summary Judgment</u>**

Both the Boardwalk Defendants and the New City Defendants have moved for an entry of summary judgment in their favor. (Doc. ## 170; 171). The Court will begin by addressing the Boardwalk Defendants' Motion.

**1. <u>The Boardwalk Defendants' Motion</u>**

In their Motion, the Boardwalk Defendants seek summary

judgment on all fifteen counts of the third amended complaint. (Doc. # 171 at 1). The Court will address each claim in turn.

### a. Counts I and XV

First, the Boardwalk Defendants argue that they are entitled to summary judgment on Counts I and XV – Plaintiffs' claims for fraud and negligent misrepresentation – because: (1) the Boardwalk Defendants "never communicated with Plaintiffs," (2) "Plaintiffs never saw and/or could not understand the documents underlying their claims," (3) "Plaintiffs relied exclusively on [New City Advisors]," (4) "there is no evidence of any intent to defraud Plaintiffs," and (5) "the alleged misrepresentations did not cause Plaintiffs' injuries." (Doc. # 171 at 14).

To establish a claim for fraud under Maryland law, the plaintiff must prove that: (1) "the defendant made a false representation to the plaintiff," (2) "its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth," (3) "the misrepresentation was made for the purpose of defrauding the plaintiff," (4) "the plaintiff relied on the misrepresentation and had the right to rely on it," and (5) "the plaintiff suffered compensable injury resulting from the misrepresentation." Crystal v. Midatlantic Cardiovascular

24

Assocs., P.A., 133 A.3d 1198, 1204 (Md. Ct. Spec. App. 2016).

"A 'false representation' is a statement, conduct, or action that intentionally misrepresents a material fact." Sass v. Andrew, 832 A.2d 247, 260 (Md. Ct. Spec. App. 2003). "A 'material' fact is one on which a reasonable person would rely in making a decision." Id. The defendant must "know[] that his representation is false, or [must be] recklessly indifferent in the sense that he knows that he lacks knowledge as to its truth or falsity." Ellerin v. Fairfax Sav., F.S.B., 652 A.2d 1117, 1125 (Md. 1995)

"Similarly, on a claim for negligent misrepresentation, the plaintiff must prove that: (1) the defendant, owing a duty of care to the plaintiff, negligently assert[ed] a false statement; (2) the defendant intend[ed] that his statement [would] be acted upon by the plaintiff; (3) the defendant ha[d] knowledge that the plaintiff [would] probably rely on the statement, which, if erroneous, [would] cause loss or injury; (4) the plaintiff, justifiably, [took] action in reliance on the statement; and (5) the plaintiff suffer[ed] damage proximately caused by the defendant's negligence." Goldstein v. Miles, 859 A.2d 313, 332 (Md. Ct. Spec. App. 2004) (citation omitted). The "critical difference" between these two torts is that "fraud is an intentional tort

requiring the defendant to know that his or her representation is false," while negligent misrepresentation "only requires conduct which falls below the standard of care the maker of the statement owes to the person to whom it is made." Gross v. Sussex Inc., 630 A.2d 1156, 1162 (Md. 1993).

Here, Counts I and XV allege: "Defendants supplied an affidavit to Plaintiffs that . . . represented that Defendants would contribute [$3 million]," "Plaintiffs received and reviewed this affidavit before investing in [Boardwalk Fries Opportunities], and relied on the representations made in the affidavit." (Doc. # 117 at ¶¶ 145-47, 247-9). Indeed, Plaintiffs concede that Counts I and XV are based on the Affidavit. (Doc. # 184 at 10-11 ("Plaintiffs' fraud [and] negligent misrepresentation . . . claims are based upon the Affidavit that DiFerdinando executed under oath[.]")).

However, the Boardwalk Defendants contend they never communicated with Plaintiffs and that Plaintiffs had not seen the Affidavit prior to investing in Boardwalk Fries Opportunities. (Doc. # 171 at 15). True, at their depositions, Chunhong Jia, Naihan Li, Shulei Wang, Lizhong Wang, Weiwei Zhang, and Chong Zhao, admitted they had no recollection of ever seeing the Affidavit. (Doc. # 202 at 52:19-5; Doc. # 204 at 64:5-16; Doc. # 205 at 36:20-25; Doc. # 206 at 46:15-47:3;

Doc. # 207 at 23:19-24:4; Doc. # 208 at 48:24-49:6). Only Nairuo Li stated he may have seen it, although for the first time approximately four years after making his investment. (Doc. # 203 at 60:10-61:5; Doc. # 22-12 at 5).

Instead of direct communications between Plaintiffs and the Boardwalk Defendants, Plaintiffs rely in part on the following testimony by Third-Party Defendant Lili Wang, the co-founder of New City Advisors:

> A. . . . [W]hen investors were told that their money was not going to be the only money in the project, they said, do you have any proof to that effect? They didn't say, I want to see this exact affidavit. They wanted proof that David DiFerdinando was going to put up the $3 million.
>
> * * *
>
> Q. Which investors did you send this to?
>
> A. All of them.
>
> * * *
>
> Q. Do you know whether your -- whether the investors actually reviewed this?
>
> A. I can't speculate to that.
>
> * * *
>
> A. I know that every investor would not have invested into this project but for the fact that there was an additional equity commitment from David DiFerdinando.
>
> Q. But you don't know whether they reviewed this affidavit or not?

> A. I don't know that they reviewed this specific affidavit. They asked for proof, and it was provided, and they were satisfied afterwards. So logic follows, but I was not in the room when they looked at this document.

(Doc. # 201 at 15:14-18, 113:6-115:16). Even assuming that it is true that Lili Wang provided translated copies of the Affidavit to Plaintiffs, she herself stated that she does not know whether Plaintiffs looked at the Affidavit. (Id. at 115:12-13). Further, any testimony by Lili Wang that "logic follows" that Plaintiffs reviewed the Affidavit is mere speculation. (Doc. # 201 at 115:14). And, Plaintiffs cite to no evidence in the record showing that they otherwise read the Affidavit, or a translation thereof. (Doc. # 184).

Although some Plaintiffs testified they were aware of the promised $3 million investment from other sources, Counts I and XV are based on the Affidavit. (Id. at 10-11). Nairuo Li testified: "I was also told that David DiFerdinando promised to invest his $3 million into the project." (Doc. # 203 at 66:21-23). When asked who told him that, he responded: "It was indicated in the document you showed me earlier. Also, [New City Advisors], that is represented by Xiao Yan Zhou, also told us so. . . . I saw this document in the year 2018, but I was told this in 2014." (Id. at 67:9-18). Lizhong Yao

testified [he] obtained this information from a brochure, not the Affidavit. (Doc. # 205 at 38:9-12 ("According to what the brochure says, the [limited partners] -- that's us, the investors -- we invest 6 million and BWF invest 3 million.")).

Therefore, Plaintiffs have not only failed to offer proof that the Affidavit was provided to them directly by the Boardwalk Defendants, but they also fail to show reasonable reliance thereon. See Gourdine v. Crews, 955 A.2d 769, 791 (Md. 2008) ("Clearly, in order to sustain a cause of action based on fraud or deceit, the defendant must have made a false representation *to the person defrauded*."). Indeed, there is no citation to the record showing Plaintiffs read or reviewed the Affidavit prior to investing in Boardwalk Fries Opportunities, such that they could reasonably rely on it.

Because the Affidavit forms the sole basis of Plaintiffs' claims for fraud and negligent misrepresentation, the Motion is granted as to Counts I and XV. See Sass, 832 A.2d at 267 ("Under the facts attendant here, we conclude that it was unreasonable for the jury to determine that appellee relied on Sass's express or implied representations as to the identity of the contractor. . . . [A]ppellee conceded that she never looked at the Contract until after Sass and Mell left her home.").

### b. Count IX

On a similar basis, the Boardwalk Defendants also move for summary judgment in their favor on Count IX – Shulei Wang and Lizhong Yao's claim for federal securities law violations. (Doc. # 171 at 19). The Boardwalk Defendants posit that "Plaintiffs cannot establish a misrepresentation by [the Boardwalk Defendants], their reliance thereon, scienter, or causation." (Id.).

Under Section 10(b) of the Securities Exchange Act of 1934, it is "unlawful for any person, directly or indirectly . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities Exchange Commission ("SEC")] may prescribe." 18 U.S.C. § 78j(b) (2020). In implementing Section 10(b), the SEC promulgated Rule 10b-5. 17 C.F.R. § 240.10b-5. To establish a claim for securities fraud under Rule 10b-5, the plaintiff must prove: (1) "a misstatement or omission," (2) "of material fact," (3) "made with scienter," (4) "on which plaintiff relied," (5) "that proximately caused injury." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1281 (11th Cir. 1999); accord Ottmann v. Hanger Orthopedic Grp., Inc., 353 F.3d 338, 342 (4th Cir. 2003).

30

Here, like Plaintiffs' other fraud claims, Count IX is based on the Affidavit. (Doc. # 117 at ¶ 205-15). Because Plaintiffs have failed to show any proof of reliance on the Affidavit, this claim also fails. See Ledford v. Peeples, 657 F.3d 1222, 1258 (11th Cir. 2011) (affirming the dismissal of a Rule 10b-5 claim because the plaintiffs failed to show reliance). Thus, the Motion is granted as to Count IX.

### c. **Count II**

Next, the Boardwalk Defendants move for summary judgment on Count II – Plaintiffs' breach of contract claim. (Doc. # 171 at 21). The Boardwalk Defendants argue that neither of them were "party to the Partnership Agreement on which Count II is based." (Id.).

In Count II, Plaintiffs allege that the Boardwalk Defendants breached the Boardwalk Fries Opportunities partnership agreement. (Doc. # 117 at ¶ 164). The agreement includes the following choice of law clause:

> 12.9 Governing Law. The laws of the State of Ohio shall govern the validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the Partners.

(Doc. # 117-5 at 29). None of the parties argue that this provision is inapplicable or against public policy. (Doc. ## 170; 171). Accordingly, Ohio law governs the agreement.

Under Ohio law, to establish a claim for breach of contract, the plaintiff must prove: (1) "the existence of a contract," (2) "performed by the plaintiff," (3) "breach by the defendant," and (4) "damages or loss to the plaintiff." Jarupan v. Hanna, 878 N.E.2d 66, 73 (Ohio Ct. App. 2007) (citation omitted). "[T]hose not a party to a contract cannot be held liable for a breach of contract." Ingle-Barr, Inc. v. E. Local Sch. Dist. Bd., Nos. 10-CA-808, 10-CA-809, 2011 WL 441314, at *2 (Ohio. Ct. App. Jan. 27, 2011).

Here, neither of the Boardwalk Defendants were parties to the partnership agreement. (Doc. # 117-5 at 5). Instead, BWF MGMT – of which Boardwalk Fries, LLC, and Archway Partners were members – was a party to the agreement, along with the limited partner investors. (Id. at 30). Boardwalk Fries, LLC, was created by Gary Chan. (Doc. # 117-3 at 5). According to the third amended complaint, Boardwalk Fresh is a member of Boardwalk Fries, LLC. (Doc. # 117 at ¶ 4). However, DiFerdinando testified at his deposition, that he was not aware of Boardwalk Fries, LLC, prior to the instant lawsuit. (Doc. # 200 at 111:7-14).

To the extent Plaintiffs seek to pierce the veil and hold either of the Boardwalk Defendants accountable for BWF MGMT's breach of contract, they cite to no record evidence

warranting such action. (Doc. # 184 at 18-19). Under Ohio law, "[t]he corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." Belvedere Condo. Unit Owners' Ass'n. v. R.E. Roark Cos., 617 N.E.2d 1075, 1086 (Ohio 1993). "[T]o fulfill the second prong of the Belvedere test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act." Dombroski v. WellPoint, Inc., 895 N.E.2d 538, 545 (Ohio 2008). Courts should pierce the veil "only in instances of extreme shareholder misconduct." Id.

In their response, Plaintiffs aver that "there is ample evidence to demonstrate that genuine issues of material fact exist to pierce the veil and get to Defendants." (Doc. # 184 at 18-19). But, Plaintiffs bear the burden of demonstrating

that piercing the corporate veil is warranted, and they cite to no record evidence supporting any of the requirements to pierce the corporate veil. (Id.); see Corrigan v. U.S. Steel Corp., 478 F.3d 718, 724 (6th Cir. 2007) ("The burden of proof to demonstrate grounds for piercing the corporate veil is on the party seeking to impose liability on the parent corporation." (citing LeRoux's Billyle Supper Club v. Ma, 602 N.E.2d 685, 689 (Ohio Ct. App. 1991))). The Court need not scour through the vast record in this case to find evidence supporting Plaintiffs' argument. See Sartori v. Schrodt, 424 F. Supp. 3d 1121, 1123 (N.D. Fla. 2019) ("These assertions [by the plaintiff in opposition to summary judgment] are unaccompanied by citations to the record, and lack support therein. Of course, mere unsupported representations of counsel do not constitute evidence that may be considered on summary judgment." (citation omitted)).

In any case, "Ohio law permits one corporation to own all of the stock of another corporation and employ common officers and directors, as well as other personnel without risking shareholder liability." Meinert Plumbing v. Warner Indus., Inc., 90 N.E.3d 966, 977 (Ohio Ct. App. 2017). Boardwalk Fries, LLC, is not the only member of BWF MGMT – indeed, Archway Partners is also a member. (Doc. # 117-5 at

5). And, to the extent the fraud underlying Plaintiffs' argument for piercing the corporate veil is predicated on their fraud claims contained in Counts I, IX, and XV, those claims have been resolved in the Boardwalk Defendants' favor. (Doc. # 184 at 18-19 ("Defendants have committed fraud as set forth earlier in this memorandum.")).

Because the Boardwalk Defendants were not parties to the partnership agreement, and Plaintiffs have failed to meet their burden to pierce the corporate veil, the Motion is granted as to Count II. See G. Lieu, Inc. v. E. Constr. & Remodeling, LLC, No. 16-AP-771, 2018 WL 332998, at *6 (Ohio Ct. App. Jan. 9, 2018) ("Our review shows that appellant cites the three-prong test for piercing the corporate veil but offers no evidence, i.e., affidavits, deposition testimony, or documents, in support of its argument that there is a genuine issue in this regard. . . . Simply put, nothing was offered for the trial court to construe most strongly in appellant's favor."); see also Ingle-Barr, 2011 WL 441314, at *2 ("In the absence of evidence to show that Eastern is a party to the contracts, Ingle-Barr has no cause of action against it and the trial court correctly entered summary judgment in Eastern's favor.").

### d. <u>Counts III and XIII</u>

Next, the Boardwalk Defendants move for summary judgment on Counts III and XIII – Plaintiffs' claims for breach of fiduciary duty and constructive fraud. (Doc. # 171 at 23). The Boardwalk Defendants maintain that these claims "are premised exclusively on their Partnership Agreements with Boardwalk Fries Opportunities" and neither of the Boardwalk Defendants "was a partner, agent, or officer of Boardwalk Fries Opportunities." (<u>Id.</u>).

To establish a claim for breach of fiduciary duty under Ohio law, the Plaintiff must prove: "(1) the existence of a duty arising from a fiduciary relationship, (2) the failure to observe the duty, and (3) an injury resulting proximately therefrom." <u>Puhl v. U.S. Bank, N.A.</u>, 34 N.E.3d 530, 536 (Ohio Ct. App. 2015). "A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." <u>State v. Massien</u>, 926 N.E.2d 1282, 1290 (Ohio 2010) (citations omitted). "A fiduciary relationship may be created either formally, by contract, or informally. . . . An informal relationship, however, cannot be unilateral, and occurs only where 'both parties understand that a special relationship or

trust has been reposed.'" <u>Adorno v. Delgado</u>, No. 04-CA-008436, 2004 WL 2348158, at *2 (Ohio Ct. App. Oct. 20, 2004) (citations omitted).

The elements of a constructive fraud claim "are very similar to . . . a breach of fiduciary duty claim." <u>Saxe v. Dlusky</u>, No. 09-AP-673, 2010 WL 4324198, at *11 (Ohio Ct. App. Nov. 2, 2010). "[A] constructive fraud claim [] require[s] the existence of some peculiar confidential relationship between the parties which affords the power and means to one to take undue advantage of or exercise under influence over another." <u>Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.</u>, 476 F. Supp. 2d 809, 823 (S.D. Ohio 2007).

Here, the third amended complaint alleges that the Boardwalk Defendants' fiduciary duty to Plaintiffs arises out of the partnership agreement. (Doc. # 117 at ¶ 169 ("This fiduciary relationship is confirmed by the Partnership Agreement, which granted the general partner 'the sole and exclusive right and responsibility to manage the business' of BWF OPP.")). In response to the Motion, Plaintiffs expand on the basis of this alleged fiduciary duty:

> [The Boardwalk Defendants] owe Plaintiffs fiduciary duties because, among other things, DiFerdinando signed the [partnership agreement] as BWF OPP's general partner in his personal capacity and/or as an agent, officer, or employee of [Boardwalk

> Fresh]. . . . This fiduciary duty is further
> supported by the fact that Boardwalk Fries LLC, the
> entity DiFerdinando purportedly signed this
> agreement on behalf of, did not exist as a matter
> of law at the time this agreement was signed.

(Doc. # 184 at 20).

Although it is true that "[p]artners in a partnership owe each other a heightened fiduciary duty to act in good faith and refrain from self dealing," the Boardwalk Defendants are not parties to the partnership agreement. Kirila v. Kirila Contractors, Inc., No. 2015-T-0108, 2016 WL 4426409, at *5 (Ohio Ct. App. Aug. 22, 2016); (Doc. # 117-5 at 30). Rather, BWF MGMT, LLC, signed the partnership agreement through its members Boardwalk Fries, LLC, and Archway Partners. (Id.). DiFerdinando signed the agreement on behalf of Boardwalk Fries, LLC, and Gary Chan signed it on behalf of Archway Partners. (Id.). Contrary to Plaintiffs' contention, they cite to no evidence that David DiFerdinando signed this agreement in his personal capacity, or that Boardwalk Fresh is in anyway bound by the agreement. (Id.). And, even if Boardwalk Fries, LLC, "did not exist" when the partnership agreement was signed, Plaintiffs provide no authority for why the Boardwalk Defendants should be liable for BWF MGMT's conduct. (Doc. # 184 at 20).

Furthermore, in their depositions, Plaintiffs admitted

they had never spoken to the Boardwalk Defendants, and so it is unclear what sort of relationship – let alone a special relationship of trust or confidence – existed between them. (Doc. # 171 at ¶ 26; Doc. # 202 at 14:22-15:5; Doc. # 204 at 11:4-5, 15:23-16:2; Doc. # 205 at 13:23-14:12; Doc. # 206 at 19:14-18; Doc. # 207 at 19:2-9; Doc. # 188-1 at 15:5-13).

Because neither of the Boardwalk Defendants were parties to the partnership agreement, nor have Plaintiffs shown that they otherwise owed a duty to Plaintiffs, the Motion is granted as to Counts III and XIII. See Adorno, 2004 WL 2348158, at *3 ("Further, Appellant has failed to present the court with any evidence tending to show that Appellee intended to create a fiduciary relationship with Appellant in this matter. Accordingly, the trial court properly granted summary judgment to Appellee on Appellant's breach of fiduciary duty claim."); D & H Autobath v. PJCS Props. I, Inc., 983 N.E.2d 891, 901 (Ohio Ct. App. 2012) (granting summary judgment in favor of the defendant on claims for breach of fiduciary duty and constructive fraud because "no genuine issues of material fact remain[ed] as to whether a fiduciary relationship existed between [the parties]").

### e. Counts XI, XII, and XIV

Next, the Boardwalk Defendants move for summary judgment

on Counts XI, XII, and XIV – Plaintiffs' claims for aiding and abetting conversion, aiding and abetting breach of fiduciary duty, and aiding and abetting constructive fraud. (Doc. # 171 at 25-27). The Boardwalk Defendants argue that "Plaintiffs' aiding and abetting theories fail as a matter of Ohio law." (Id. at 25).

The Court agrees. Claims for aiding and abetting tortious conduct are not cognizable under Ohio law. See In re Nat'l Century Fin. Enters., Inc. Inv. Litig., 905 F. Supp. 2d 814, 833-34 (S.D. Ohio 2012) ("[I]t is clear now that a claim . . . for aiding and abetting tortious conduct is not cognizable under Ohio law."), aff'd sub nom. Pharos Cap. Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522 (6th Cir. 2013). The Court has already determined that Ohio law applies to Plaintiffs' claims for aiding and abetting conversion, aiding and abetting breach of fiduciary duty, and aiding and abetting constructive fraud. Therefore, Counts XI, XII, and XIV fail as a matter of Ohio law, and the Motion is granted as to these claims. See Peter D. Brown Tr. v. Shriver, No. 1:17-cv-280, 2018 WL 776365, at *1-2 (S.D. Ohio Feb. 8, 2018) (dismissing the plaintiff's claim for aiding and abetting breach of fiduciary duty because it failed as a matter of Ohio law); see also Parlin Fund LLC v. Citibank

<u>N.A.</u>, No. 1:13-CV-111, 2013 WL 3934997, at *8 (S.D. Ohio July 30, 2013) ("Plaintiffs' claims of aiding and abetting fraud and conversion fail as a matter of law.").

### f. <u>Count X</u>

Next, the Boardwalk Defendants move for summary judgment on Count X – Plaintiffs' claim for aiding and abetting fraud. (Doc. # 171 at 20). The Boardwalk Defendants argue that "Plaintiffs cannot show that [the Boardwalk Defendants] knew about the Chans' plan to take Plaintiffs' funds or that Defendants were somehow 'in on' the Chans' scheme." (<u>Id.</u>).

Unlike Ohio law, "Maryland has expressly recognized aider and abettor tort liability." <u>Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.</u>, 665 A.2d 1038, 1049 (Md. 1995). To establish a claim for aiding and abetting fraud, the plaintiff move prove that: "(1) there is a violation of the law (tort) by the principal[,] (2) [the] defendant knew about the violation, and (3) [the] defendant gave substantial assistance or encouragement to the principal to engage in the tortious conduct." <u>Legacy Inv. & Mgmt., LLC v. Susquehanna Bank</u>, No. WDQ-12-2877, 2014 WL 824066, at *4 (D. Md. Feb. 28, 2014) (citation omitted).

Here, Count X is based on the Boardwalk Defendants providing allegedly false information to the Chans that was

in turn provided to Plaintiffs to induce them into investing in Boardwalk Fries Opportunities. (Doc. # 117 at ¶¶ 218-22). The Court finds that Plaintiffs have cited to no evidence in the record showing that the Boardwalk Defendants knew that the information they provided was false or that they knew the Chans intended to remove Plaintiffs' funds from escrow for their own benefit. (Doc. # 184). Further, in the third amended complaint, plaintiffs allege that "Defendants knew that the materials described in paragraph 181 were false and misleading." (Doc. # 117 at ¶ 218). However, paragraph 181, which is contained within Count V, does not list any of these materials. (Id. at ¶ 181 (stating only: "Plaintiffs restate Paragraphs 1 through 143 as if fully written)).

To the extent Count X is based on the Affidavit, Plaintiffs have failed to demonstrate reliance thereon. Nor have Plaintiffs cited to evidence showing that the Affidavit was provided to the Chans by the Boardwalk Defendants. (Doc. # 184). Accordingly, Plaintiffs' aiding and abetting fraud claim fails, and the Motion is granted as to Count X.

### g. Counts IV and V

Next, the Boardwalk Defendants move for summary judgment on Counts IV and V – Plaintiffs' claims for negligence and gross negligence. (Doc. # 171 at 26). The Boardwalk Defendants

posit that these claims "are based on the statutory standard of care that a general partner owes to a limited partnership," but "neither DiFerdinando nor [Boardwalk Fresh] was the general partner of Boardwalk Fries Opportunities." (Id.). And, as to the gross negligence claim, "Plaintiffs have failed to adduce any evidence that [the Boardwalk Defendants] knew or had reason to know that the Chans planned to steal Plaintiffs' funds." (Id.).

To establish a claim for negligence under Ohio law, the plaintiff must prove: "(1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) the breach of the duty proximately caused the plaintiff's injury." Vanderbilt v. Pier 27, LLC, 2 N.E.3d 966, 970 (Ohio Ct. App. 2013). "The existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability." Winkle v. Zettler Funeral Homes, Inc., 912 N.E.2d 151, 162 (Ohio Ct. App. 2009) (internal quotation marks and citation omitted). "The determination of whether a duty exists is a question of law for the court to decide." Id.

"[G]ross negligence is defined in terms of wanton or reckless conduct." Mohat v. Horvath, No. 2013-L-009, 2013 WL 5450296, at *4 (Ohio Ct. App. Sept. 30, 2013). "'Wanton'

misconduct is the failure to exercise any care whatsoever." Vidovic v. Hoynes, 29 N.E.3d 338, 348 (Ohio Ct. App. 2015). "'Recklessness' includes a 'perverse disregard of a known risk where the actor is conscious that his conduct will probably result in injury.'" Id. (citation omitted).

Here, Plaintiffs allege the following basis for the duty of care owed to them by the Boardwalk Defendants:

> Defendants owed Plaintiffs a duty of care to properly manage BWF OPP and their investment funds consistent with the Partnership Agreement, EB-5 rules and regulations, and the representations made to Plaintiffs as described above. . . . This standard of care of a general partner in a limited partnership is detailed in Ohio and Florida laws. General partners accordingly owe limited partners duties of, among other things, loyalty and care.

(Doc. # 117 at ¶¶ 176-77). Thus, the alleged duty derives primarily from the Boardwalk Defendants' being parties to the partnership agreement. (Id.).

Plaintiffs are correct that general partners owe a duty of care to a limited partnership under Ohio law. See Ohio Rev. Code § 1782.241 ("A general partner shall perform the duties of a general partner in good faith, in a manner the general partner reasonably believes to be in or not opposed to the best interests of the limited partnership, and with the care that an ordinarily prudent person in a like position would use under similar circumstances."). But, as previously

44

explained, neither of the Boardwalk Defendants are or were general partners of Boardwalk Fries Opportunities. (Doc. # 117-5 at 5). And, the Chan Defendants – not the Boardwalk Defendants – were responsible for the EB-5 aspect of the venture. (Doc. # 213 at ¶ 3; Doc. # 117-2 at ¶¶ 7-8).

Because Plaintiffs have cited to no other record evidence for the duty owed to them by the Boardwalk Defendants, their negligence claims fail as a matter of law. See Smrtka v. Boote, 88 N.E.3d 465, 471 (Ohio Ct. App. 2017) (affirming the trial court's grant of summary judgment in the defendant's favor on a negligence claim because the defendant owed no duty to the plaintiff); see also Winkle, 912 N.E.2d at 162 ("In the absence of any duty, appellants' gross-negligence claim must fail as a matter of law."). Accordingly, the Motion is granted as to Counts IV and V.

### h. Count VI

Next, the Boardwalk Defendants move for summary judgment in their favor on Count VI – Plaintiffs' conversion claim. (Doc. # 171 at 27). The Boardwalk Defendants argue that "Plaintiffs are unable to establish that [they] ever possessed or controlled Plaintiffs' property – or that [they] had any knowledge of the Chans' scheme." (Id.).

To establish a conversion claim under Ohio law, the

45

plaintiff must prove: "(1) [the] plaintiff's ownership or right to possess the property at the time of the conversion; (2) [the] defendant's conversion by a wrongful act or disposition of [the plaintiff's] property; and (3) damages." Calvey v. Stifel, Nicolaus & Co., 850 F. App'x 344, 350 (6th Cir. 2021) (quoting Kuvedina, LLC v. Cognizant Tech. Sols., 946 F. Supp. 2d 749, 761 (S.D. Ohio 2013)). "Money may be converted when it is identifiable and there is an obligation to return the specific money in question." Kiss v. Dodge, No. E-98-027, 1998 WL 904920, at *3 (Ohio Ct. App. Dec. 31, 1998) (citing Schutt v. Bates, 169 N.E. 314, 314 (Ohio Ct. App. 1929)). "[T]he plaintiff must establish that the funds were 'earmarked,' that is, that the defendant had an obligation to deliver a specific corpus of money capable of identification and not merely that the defendant had an obligation to pay a certain sum as a general debt." RAE Assocs., Inc. v. Nexus Commc'ns, Inc., 36 N.E.3d 757, 765-66 (Ohio Ct. App. 2015); see also Macula v. Lawyers Title Ins. Corp., No. 1:07-CV-1545, 2008 WL 3874686, at *5 (N.D. Ohio Aug. 14, 2008) ("Conversion of money occurs only when the money is specifically earmarked, or capable of identification such as 'money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been

sequestered.'" (citation omitted)).

Here, the property allegedly converted are Plaintiffs' investment funds. (Doc. # 117 at ¶ 190). Plaintiffs allege that the Boardwalk Defendants "knowingly caused Plaintiffs' funds to be removed from escrow and transferred Plaintiffs' funds directly to themselves for their own benefit, and have knowingly allowed their agents and co-conspirators, the Chans, to use [the] funds for purposes unrelated to [Boardwalk Fries Opportunities'] business purpose." (Id. at ¶ 191).

However, Plaintiffs cite to no evidence in the record demonstrating that the Boardwalk Defendants ever possessed any of Plaintiffs' specifically identifiable funds. In response to the Motion, Plaintiffs state: "DiFerdinando on behalf of BWF OPP and BWF MGMT signed written authorization to allow Gary Chan access to Plaintiffs' funds. Thus, DiFerdinando individually or on behalf of [Boardwalk Fresh] controlled the disbursement of escrow funds – otherwise his written authorization would be unnecessary." (Doc. # 184 at 22). It is true that Boardwalk Fries Opportunities and BWF MGMT, as general partner thereof, signed a letter authorizing Gary Chan to access funds in the escrow account. (Doc. # 117-16). But, even though DiFerdinando signed this as an authorized signer for both companies, there is no evidence

that he signed this document in his personal capacity. (Id.).

And, even with this authorization, Plaintiffs have proffered no proof the Boardwalk Defendants ever obtained any of Plaintiffs' identifiable funds. Rather, the facts of the case indicate only that Gary Chan gained access to Plaintiffs' investment funds. (Doc. # 184 at ¶ 18). To the extent Plaintiffs seek to state a claim for the Boardwalk Defendants aiding and abetting Gary Chan's conversion of their funds, the Court has already determined that no such action can lie under Ohio law. See Parlin Fund, 2013 WL 3934997, at *8 (holding that the plaintiff's claim for aiding and abetting conversion fail as a matter of Ohio law). And, insofar as Plaintiffs contend that the Boardwalk Defendants later received "at least $330,000 of Plaintiffs' misappropriated investment funds" from the Chans, they provide no proof from which the Court can glean that these funds are their investment funds. (Doc. # 117 at ¶ 138). Plaintiffs offer only Boardwalk Fresh's bank statement, which displays a $330,000 wire from Jardin Hill, but, again, provide no other evidence showing that these funds are in any way related to their investment funds. (Doc. # 117-17 at 3). Nor have Plaintiffs cited to any record evidence showing that the Boardwalk Defendants knew about Chan's alleged conversion.

Because Plaintiffs have offered no record evidence that the Boardwalk Defendants possessed their specifically identifiable monies such that there was an obligation to return the specific money in question, their conversion claim fails. See Kuvedina, 946 F. Supp. 2d at 761 ("An action for conversion requires that a defendant have an obligation to deliver specific money, not merely a certain sum of money"). Accordingly, the Motion is granted as to Count VI. See Hillier v. Fifth Third Bank, 154 N.E.3d 1266, 1281 (Ohio Ct. App. 2020) ("We do agree that summary judgment on this point was properly granted to Judith, as she was not the party wrongfully disposing of the assets."); see also Vienna Beauty Prods. Co. v. Cook, 53 N.E.3d 808, 813-14 (Ohio Ct. App. 2015) ("[W]e reject Vienna's suggestion that Mr. Cook is liable for conversion simply because he 'benefitted' from Mrs. Cook's theft of the checks. . . . [W]hether he 'benefitted' from his wife's misconduct is 'irrelevant' to Vienna's conversion claim. This is particularly true in the absence of evidence that he even knew about her theft of the checks. . . . Finally, we are unpersuaded by Vienna's claim that Mr. Cook is personally liable for conversion based on his status as the sole owner of ACER, his incorporated construction company." (citations and footnote omitted)).

### i. <u>Count VII</u>

Next, the Boardwalk Defendants move for summary judgment on Count VII – Plaintiffs' unjust enrichment/quantum meruit claim. (Doc. # 171 at 28). The Boardwalk Defendants maintain that "there is no evidence that Plaintiffs conferred any benefit on [them]" and "[t]o the extent that Plaintiffs [] argue that the funds paid by Jardin Hill to [Boardwalk Fresh] . . . could have originated from Plaintiffs' investments, . . . Defendants' lack . . . knowledge about the purported benefit." (<u>Id.</u> at 29 (emphasis omitted)). The Boardwalk Defendants also argue that Plaintiffs "cannot show anything unjust or inequitable about [Boardwalk Fresh's] retention of funds from Jardin Hill pursuant to their arms' length . . . agreement." (<u>Id.</u>).

"A claim for unjust enrichment sounds in quasi-contract, not tort." <u>ThunderWave, Inc. v. Carnival Corp.</u>, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997). Because Count VII is based on Plaintiffs' investment in Boardwalk Fries Opportunities – subject to the partnership agreement – Ohio law governs this claim. See <u>Bayuk v. Prisiajniouk</u>, No. 8:18-cv-163-SPF, 2019 WL 4694230, at *4 (M.D. Fla. Sept. 26, 2019) (applying Delaware law to an unjust enrichment claim by virtue of the relevant contract's choice of law clause); (Doc. # 117-5 at

50

29 (including a choice of law clause selecting Ohio law)).

To establish a claim for unjust enrichment under Ohio law, the plaintiff must prove: (1) "a benefit conferred by a plaintiff upon the defendant," (2) "knowledge by the defendant of the benefit," and (3) "retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment."[1] Clifton v. Johnson, No. 15-CA-30, 2016 WL 7231124, at *4 (Ohio Ct. App. Dec. 6, 2016) (citation omitted). "The plaintiff must confer the benefit as a response to fraud, misrepresentation, or bad faith on behalf of the defendant." Schlaegel v. Howell, 42 N.E.3d 771, 782 (Ohio Ct. App. 2015) (citation omitted). A claim for quantum meruit "contains the same elements as required for recovery under unjust enrichment." Hartley v. Dayton Comput. Supply, 106 F. Supp. 2d 976, 984 (S.D. Ohio 1999) (citation omitted).

Here, Plaintiffs' claim for unjust enrichment is based on the $3.5 million in funds transferred by Gary Chan to Boardwalk Fries Opportunities. (Doc. # 117 at ¶ 196). However, like the conversion claim, Plaintiffs have offered no record evidence that this money was ever transferred to or retained

---

1. The same elements must be proven under Maryland law. See Smith v. Alacrity Servs., LLC, 778 F. Supp. 2d 606, 610 (D. Md. 2011) (listing the requirements under Maryland law).

by the Boardwalk Defendants. Rather, the facts as alleged by Plaintiffs indicate that the investment funds were sent to Boardwalk Fries Opportunities' escrow account and then taken by Gary Chan. (Doc. # 184 at ¶¶ 12, 18). To the extent Plaintiffs claim the $330,000 transferred from Jardin Hill to Boardwalk Fresh includes such funds, they provide no proof thereof. (Doc. # 184). Nor do they cite to any record evidence demonstrating that Boardwalk Fresh had knowledge that this constituted Plaintiffs' investment funds. (Id.); see (Doc. # 117-4 at 145:21-146:1 ("I don't know whether it's [Gary Chan's] money or the investors' money.")). Thus, Plaintiffs' unjust enrichment claim fails, and the Motion is granted as to Count VII. See Tel. Mgmt. Corp. v. Goodyear Tire & Rubber Co., 32 F. Supp. 2d 960, 972 (N.D. Ohio 1998) ("Plaintiff TMC fails to show facts sufficient to support its claim of unjust enrichment. . . . [N]o material evidence shows that TMC conferred any benefit upon Goodyear.").

### j. **Count VIII**

Lastly, the Boardwalk Defendants move for summary judgment in their favor on Count VIII – Plaintiffs' civil conspiracy claim, arguing that it "fail[s] under the intracorporate conspiracy doctrine," and that "Plaintiffs cannot adduce any evidence that [the Boardwalk Defendants]

52

acted with malice" or that they "had any knowledge of the Chans' improper intentions." (Doc. # 171 at 30-31).

To establish a civil conspiracy claim under Ohio law, the plaintiff must prove: "(1) a malicious combination; (2) [of] two or more persons; (3) injury to person or property; and (4) [the] existence of an unlawful act independent from the actual conspiracy."[2] Lee v. Countrywide Home Loans, Inc., 692 F.3d 442, 446 (6th Cir. 2012) (citation omitted). Thus, a civil conspiracy claim "is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy." Meehan v. Mardis, 146 N.E.3d 1266, 1276 (Ohio Ct. App. 2019).

Here, because Plaintiffs' civil conspiracy claim is premised on their other tort claims, which the Court has found all fail as a matter of law, and no other separate unlawful act is alleged, this claim also fails. See Doane v. Givaudan Flavors Corp., 919 N.E.2d 290, 298 (Ohio Ct. App. 2009) ("Without an underlying tort, Doane and Wallace cannot establish a claim for civil conspiracy."); see also A-Pinn Contracting LLC v. Miller Pipeline LLC, No. 1638, 2019 WL

---

2. Substantially the same elements apply to a civil conspiracy claim under Maryland law. See Windesheim v. Larocca, 116 A.3d 954, 975 (Md. 2015) (listing the elements to establish a civil conspiracy claim under Maryland law).

3731895, at *8 (Md. Ct. Spec. App. Aug. 8, 2019) ("[A] conspiracy cannot be made the subject a civil action, unless something is done which, without the conspiracy, would give a right of action. . . . Because the circuit court did not err in granting summary judgment on all of A-Pinn's other claims, A-Pinn's civil conspiracy claim cannot be sustained." (internal quotation marks and citations omitted)). Therefore, the Motion is granted as to Count VIII. See Morrow v. Reminger & Reminger Co., 915 N.E.2d 696, 712 (Ohio Ct. App. 2009) ("{The] civil conspiracy claim is based on falsification and fraud by appellees. Having concluded that the amended complaint fails to state causes of action for falsification and fraud, we likewise conclude that it fails to state a cause of action for the derivate claim of conspiracy.").

### 2. **The New City Defendants' Motion**

In their Motion, the New City Defendants seek summary judgment on all remaining claims of the second amended third-party complaint. (Doc. # 170). However, the second amended third-party complaint includes only the Boardwalk Defendants' claims for contribution against the New City Defendants, and their claims for contribution and indemnification against the Chan Defendants – which are all based solely on Plaintiffs' underlying claims. (Doc. ## 141; 159). Further, the Court has

already determined that all of Plaintiffs' underlying claims fail as a matter of law.

Because a claim for contribution or indemnification cannot survive without an underlying claim, the Boardwalk Defendants' third-party claims are now moot. See Payton v. Rehberg, 694 N.E.2d 1379, 1385 (Ohio Ct. App. 1997) ("Indeed, the claim for contribution or indemnity against Curry became moot once the underlying claim was dismissed."); see also In re Colum. Leasing L.L.C., 991 F. Supp. 2d 722, 739 (E.D. Va. 2014) ("Furthermore, the Court's determination with respect to Plaintiffs' Motion for Summary Judgment renders moot Ceres' claim seeking contribution if 'Ceres and Columbia are found jointly liable for the Mullens['] injuries," . . . and the Court will [dismiss] Ceres' contribution claim on that basis."); Shelton v. United States, No. PWG-14-2031, 2017 WL 679214, at *7 (D. Md. Feb. 21, 2017) (noting that under Maryland law, "a claim for indemnification is derivative, and does not arise, unless and until the party seeking indemnification has paid an adverse judgment or settlement" (citation omitted)); Wheatley Co. v. Walton, No. 9-91-16, 1991 WL 280009, at *2 (Ohio Ct. App. Dec. 30, 1991) ("Thus the dismissal of the claim by The Wheatley Company against appellant renders moot appellant's derivative claims for

indemnification by his co-defendants."). Therefore, the second amended third-party complaint is dismissed as moot, and the New City Defendants' Motion is denied.

## IV.   Conclusion

The New City Defendants' Motion for Determination of Choice of Law (Doc. # 169) is denied. The Court finds that Maryland law applies to Counts I, X, and XV, of the third amended complaint, while Ohio law applies to Counts III, IV, V, VI, VIII, XI, XII, XIII, and XIV.

The Boardwalk Defendants' Motion for Summary Judgment (Doc. # 171) is granted. All fifteen claims in the third amended complaint fail as a matter of either Maryland or Ohio law. The New City Defendants' Motion for Summary Judgment (Doc. # 170) is denied. However, because the claims in the underlying complaint have been dismissed, the derivative second amended third-party complaint is dismissed as moot.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Third-Party Defendants Min Wang a/k/a Lili Wang, Yannan Wang, New City Advisors, LLC, and New City Capital, LLC's (collectively, the "New City Defendants'") Motion for Determination of Choice of Law (Doc. # 169) is **DENIED.**

(2)   Defendants Boardwalk Fresh Burgers & Fries, Inc., and

David DiFerdinando's (collectively, the "Boardwalk Defendants'") Motion for Summary Judgment (Doc. # 171) is **GRANTED**.

(3)     The Clerk is directed to enter judgment in favor of the Boardwalk Defendants, and against Plaintiffs Chunhong Jia, Naihan Li, Nairuo Li, Shulei Wang, Lizhong Yao, Weiwei Zhang, and Chong Zhao, as to all claims against them in the third amended complaint. (Doc. # 117).

(4)     The New City Defendants' Motion for Summary Judgment (Doc. # 170) is **DENIED**.

(5)     The second amended third-party complaint (Doc. # 141) is **DISMISSED** as moot.

(6)     The Clerk is directed to **SET ASIDE** its entries of default as to Third-Party Defendants Archway Partners, LLC, and Clearwater Hospitality Group, LLC. (Doc. ## 113; 114).

(7)     Thereafter, the Clerk is directed to **CLOSE** the case.

     **DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>9th</u> day of August, 2021.

<u>Virginia M. Hernandez Covington</u>
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE